FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2016 NOV 30 PM 3: 16

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

GAIL KELEMEN,

Plaintiff,

-VS-                                                CASE NO.:  6:16-cv-2070-Orl-28-DCI

CITIBANK, NATIONAL
ASSOCIATION

Defendant.

_____/

## COMPLAINT

COMES NOW Plaintiff, Gail Kelemen, by and through the undersigned counsel, and sues Defendant, Citibank, National Association, ("Citibank") and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

## INTRODUCTION

1.    The TCPA was enacted to prevent companies like Citibank from invading American citizen's privacy and prevent abusive "robo-calls."

2.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

1

3.     "Senator Hollings, the TCPA's sponsor, described these calls as 'the

*1256 scourge of modern civilization, they wake us up in the morning; they interrupt our

dinner at night; they force the sick and elderly out of bed; they hound us until we want to

rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings

presumably intended to give telephone subscribers another option: telling the autodialers

to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir.

2014).

4.     According   to   the   Federal   Communications   Commission   (FCC),

"Unwanted calls and texts are the number one complaint to the FCC. There are thousands

of complaints to the FCC every month on both telemarketing and robocalls. The FCC

received more than 215,000 TCPA complaints in 2014." *Fact Sheet:  Wheeler Proposal*

*to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless*

*Phones*,    Federal    Communications    Commission,    (May    27,    2015),

http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-

333676A1.pdf.

## JURISDICTION AND VENUE

5.     This is an action for damages exceeding Seventy-Five Thousand Dollars

($75,000.00) exclusive of attorney fees and costs.

6.     Jurisdiction and venue for purposes of this action are appropriate and

conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves

violations of the TCPA.

7.      Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8.      The alleged violations described herein occurred in Orange County. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9.      Plaintiff is a natural person, and citizen of the State of Florida, residing in Orange County, Florida

10.     Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

11.     Plaintiff is an "alleged debtor."

12.     Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13.     Defendant is a financial corporate entity with its principal place of business located at 701 East 60th Street North, Sioux Falls, South Dakota 57104 and which conducts business within the State of Florida.

14.     The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

15.     Citibank is a "creditor" as defined in Florida Statute §559.55(5)

16.     Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (407) ***-6502 and was the called party and recipient of Defendant's calls.

17.     Citibank called Plaintiff on Plaintiff's cellular telephone approximately one hundred (100) times since June 2016, in an attempt to collect a debt.

18.     Citibank attempted to collect an alleged debt from Plaintiff by this campaign of telephone calls.

19.     Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone number: (855) 805-5486 and (817) 802-1539.

20.     Upon information and belief, some or all of the calls that Citibank made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C §

227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received, and because when she answered a call, Plaintiff received pre-recorded messages from Citibank.

21.   Not a single call placed by Citibank to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

22.   Beginning on or about June 1, 2016, Citibank began bombarding Plaintiff's cellular telephone (407) 920-6502 in an attempt to recover an alleged debt that her Husband, Steven, solely owes.

23.   On or about June 1, 2016, Plaintiff started receiving calls from Defendant to the aforementioned cellular number, which continued every month through the date of this Complaint was filed.

24.   Plaintiff does not have any business relationship with Citibank and is not aware how Citibank acquired her cellular telephone number.

25.   On or about July 16, 2016, Plaintiff explained to Citibank's agent/representative that the account Citibank was calling her for belonged solely to her Husband, and requested that Citibank stop calling her cellular telephone.

26.   During the aforementioned call on July 16, 2016 with Citibank, Plaintiff unequivocally revoked any express consent Defendant had for the placement of telephone calls to Plaintiff's aforementioned cellular telephone number.

27.    On or about October 12, 2016, due to continued automated calls from Citibank, Plaintiff again answered a call from Citibank's agent/representative, and again stated that her Husband could not be reached at her cellular telephone number, and demanded Citibank cease calling her aforementioned cellular telephone number, whereupon Citibank hung up on Plaintiff.

28.    On or about October 13, 2016, Plaintiff answered a call from a Citibank agent/representative, known as "Nina", and demanded that Citibank cease calling her aforementioned cellular telephone number, whereupon "Nina" hung upon on Plaintiff.

29.    Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

30.    From approximately June 1, 2016 through the filing of this Complaint, Defendant has called Plaintiff's aforementioned cellular telephone on a daily basis, despite Plaintiff's request for the calls to stop.

31.    Due to the amount of automated calls Plaintiff received from Citibank to her cellular telephone, she was not able to properly catalogue each and every one; however, attached hereto as Exhibit "A" is a small sampling of the calls Plaintiff received.

32.    Citibank has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

33.    Citibank has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Citibank, to remove the number.

34.    Citibank's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Citibank they wish for the calls to stop.

35.    Citibank has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

36.    Citibank has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

37.    Citibank has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

38.    Citibank's corporate policy provided no means for Plaintiff to have her number removed from Defendant's call list.

39.    Citibank has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

40.    Citibank willfully and/or knowingly violated the TCPA with respect to Plaintiff.

41.     From each and every call placed without consent by Citibank to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

42.     From each and every call without express consent placed by Citibank to Plaintiff's cell phone, Plaintiff suffered the injury of occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Citibank's calls.

43.     From each and every call placed without express consent by Citibank to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls she answered, the time she spent on the call was unnecessary as she repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

44.     Each and every call placed without express consent by Citibank to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

45.     Each and every call placed without express consent by Citibank to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

46.     Each and every call placed without express consent by Citibank to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

47.     Each and every call placed without express consent by Citibank to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

48.     As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by anxiety, aggravation, and even some chest pain. Furthermore, due to the amount of stress associated with the calls, Plaintiff is currently taking medication to treat same.

## COUNT I
### (Violation of the TCPA)

49.     Plaintiff fully incorporates and realleges paragraphs one (1) through forty eight (48) as if fully set forth herein.

50.     Citibank willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Citibank that she wished for the calls to stop.

51.     Citibank repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Citibank for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II

### (Violation of the FCCPA)

52.     Plaintiff fully incorporates and realleges paragraphs one (1) through fifty one (51) as if fully set forth herein

53.     At all times relevant to this action Citibank is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

54.     Citibank has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

55.     Citibank has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

56.    Citibank's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Citibank for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

Octávio Gomez, Esquire
Morgan & Morgan, Tampa, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
tgomez@forthepeople.com
Florida Bar #: 0338620
Attorney for Plaintiff